IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COT'N WASH, INC. and BIG 3 PACKAGING, LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) C.A. No. 12-651 (SLR) ) |
| THE SUN PRODUCTS CORPORATION, | ) ) ) |
| Defendant. | ) |

**DEFENDANT THE SUN PRODUCTS CORPORATION'S
OPENING BRIEF IN SUPPORT OF ITS
<u>MOTION TO AMEND SUN'S ANSWER AND COUNTERCLAIMS</u>**

                                                MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                                                Jack B. Blumenfeld (#1014)
                                                Regina Murphy (#5648)
                                                1201 North Market Street
                                                P.O. Box 1347
                                                Wilmington, DE  19899
                                                (302) 658-9200
                                                jblumenfeld@mnat.com
                                                rmurphy@mnat.com

                                                *Attorneys for Defendant The Sun Products*
                                                *Corporation*

OF COUNSEL:

Errol B. Taylor
Fredrick M. Zullow
Anna Brook
MILBANK, TWEED, HADLEY & MCCLOY LLP
1 Chase Manhattan Plaza
New York, NY  10005
(212) 530-5000

January 31, 2014

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................................... II

I.   INTRODUCTION ...............................................................................................................1

II.  STATEMENT OF FACTS ..................................................................................................1

  A.  Henkel and Aqua Chempacs Defendants File Inequitable Conduct Counterclaims and Sun's Investigation ..............................................................2

  B.  Sun Promptly Disclosed Its Inequitable Conduct and False Marking Counterclaims ..........................................................................................3

  C.  The Parties Reached Agreement to Amend Their Pleadings ...............................3

  D.  Plaintiffs Took Discovery Related to Sun's Proposed Counterclaims Between October 15, 2013 and January 2014 ...............................4

III. ARGUMENT .......................................................................................................................5

  A.  Sun Did Not Delay In Asserting its Proposed Counterclaims ............................5

  B.  Sun's Motion to Amend is Brought in Good Faith ..............................................7

  C.  Plaintiffs Will Not Be Unduly Prejudiced by this Amendment ..........................7

  D.  Sun's Proposed Counterclaims are Not Futile .....................................................9

IV.  CONCLUSION ..................................................................................................................12

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Arthur v. Maersk, Inc.*,
   434 F.3d 196 (3d Cir. 2006) ...............................................................................................5

*Bd. of Trs. v. Wettlin Assocs.*,
   237 F.3d 270 (3d Cir. 2001) ...............................................................................................9

*Bechtel v. Robinson*,
   886 F.2d 644 (3d Cir. 1989) ...........................................................................................5, 7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................................9

*Big 3 Packaging, LLC v. Aqua Chempacs, LLC, et. al.*,
   No. 12-cv-5806 (E.D. Pa.) .................................................................................................2

*Bjorgung v. Whitetail Resort, LP*,
   550 F.3d 263 (3d Cir. 2008) ...............................................................................................6

*Ca. Med. Prod., Inc. v. Tech. Med. Prod., Inc.*,
   921 F. Supp. 1219 (D. Del 1995) .....................................................................................10

*Clontech Lab., Inc. v. Invitrogen Corp.*,
   406 F.3d 1347 (Fed. Cir. 2005).........................................................................................11

*Cordance Corp. v. Amazon.com, Inc.*,
   255 F.R.D. 366 (D. Del. 2009) .......................................................................................6, 7

*Dole v. Arco Chemical Co.*,
   921 F.2d 484 (3d Cir. 1990) ...........................................................................................5, 7

*Enzo Life Sciences, Inc. v. Digene Corp.*,
   270 F. Supp. 2d 484 (D. Del. 2003) ...................................................................................6

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009).......................................................................................5, 9

*Foman v. Davis*,
   371 U.S. 178 (1962) ...........................................................................................................5

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997).............................................................................................9

*Ira Green, Inc. v. J.L. Darling Corp.*,
  No. 11–cv–05796, 2011 WL 6218146 (W.D. Wash. Dec. 5, 2011) ........................................12

*Leader Technologies, Inc. v. Facebook, Inc.*,
  No. 08–862, 2010 WL 2545959 (D. Del. June 24, 2010) ........................................................6

*RB Rubber Prod., Inc. v. ECORE Intern., Inc.*,
  No. 11–cv–319, 2013 WL 3432081 (D. Or. July 8, 2013) ............................................. 11, 12

*Senju Pharm. Co., Ltd. v. Apotex, Inc.*,
  921 F. Supp. 2d 297 (D. Del. 2013) (Robinson, J.) ..................................................................9

*Travelers Indem. Co. v. Dammann & Co., Inc.*,
  594 F.3d 238 (3d Cir. 2010) ......................................................................................................9

**RULES AND STATUTES**

35 U.S.C. § 292 ..................................................................................................................................10

35 U.S.C § 292(a) ..............................................................................................................................10

35 U.S.C § 292(b) ..............................................................................................................................10

Fed. R. Civ. P. 9(b) .........................................................................................................................5, 9

Fed. R. Civ. P. 12(b)(6) .......................................................................................................................9

Fed. R. Civ. P. 15(a) ............................................................................................................................5

The Sun Products Corporation ("Sun") respectfully requests the Court's leave to amend its affirmative defenses and counterclaims to add claims of (1) unenforceability of U.S. Patent No. 6,037,319 (the "'319 patent") based on inequitable conduct before the US Patent and Trademark Office ("PTO"), and (2) false marking of Plaintiff Cot'n Wash's products with the '319 patent.

## I.   INTRODUCTION

Sun timely requested Plaintiffs' consent to amend its counterclaims. As discussed below, in mid-October before any depositions were taken and over three months before the close of fact discovery, Sun provided Plaintiffs a copy of the proposed amended pleading. After negotiations that involved Sun's counterclaims and Plaintiffs' proposed amendments to their complaint, it appeared that the parties reached an agreement and would consent to each other's amendments. During this time, Plaintiffs took discovery in the Sun and Henkel cases on the issues addressed in Sun's new counterclaims. Plaintiffs have now reneged on the agreement and refuse to agree to Sun amending its counterclaims. Despite Sun's best efforts to obtain Plaintiffs' consent, Plaintiffs have refused, and Sun is forced to bring this motion.

## II.   STATEMENT OF FACTS

On May 23, 2012, Plaintiffs Big 3 Packaging, LLC ("B3P") and Cot'n Wash Inc. ("Cot'n Wash") filed suit against Sun alleging infringement of the '319 patent. On the same day, Plaintiffs also brought suit against the Henkel Corporation ("Henkel") in Case No. 12-cv-650 (D. Del.), also alleging infringement of the '319 patent. The Court designated the cases as related, ordered a coordinated schedule for both litigations, and bifurcated the cases into a liability phase and a damages and willfulness phase. *See* Scheduling Order (D.I. No. 20). In October 2012, B3P filed suit alleging infringement of the same '319 patent against Aqua

1

Chempacs and other defendants in *Big 3 Packaging, LLC v. Aqua Chempacs, LLC, et. al.*, No. 12-cv-5806 (E.D. Pa.).

### A. Henkel and Aqua Chempacs Defendants File Inequitable Conduct Counterclaims and Sun's Investigation

In August 2013, the Aqua Chempacs and Henkel defendants filed counterclaims and affirmative defenses of unenforceability due to inequitable conduct. Plaintiffs consented to Henkel amending its counterclaims. *See* Henkel First Amended Answer (Brook Decl., Ex. A). Upon obtaining the publicly available amended counterclaims, Sun undertook an investigation to discover the facts and basis for the allegations.

Separately, in August 2013, Plaintiffs asked Sun to consent to Plaintiffs' amended complaint to add a claim for breach of a confidentiality agreement between Sun and Cot'n Wash. Sun responded that it would consent,[1] if Plaintiffs also agreed to Sun amending its counterclaims at a later date. (Brook Decl., Ex. B). Sun raised the issue because of Sun's ongoing investigation into inequitable conduct.

While the parties were negotiating the terms of the proposed stipulation, Sun interviewed Mr. Cicini on October 7, 2013. Mr. Cicini is a former employee of Lawrence Dickler (one of the named inventors of the '319 patent) and was named in Henkel's and Aqua Chempacs' counterclaims. In this interview, Sun learned that to the extent there is anything inventive regarding the '319 patent, Mr. Cicini should have been named as an inventor (or even the only inventor), and that Mr. Cicini demonstrated packets made according to the '319 patent to potential customers more than one year before the patent's filing date. Mr. Cicini's role was

---

[1] Sun proposed and Plaintiffs appeared to agree that the proposed breach of the confidentiality agreement claim be addressed during the damages and willfulness portion to this case, which were bifurcated.

never disclosed to the PTO during prosecution of the '319 patent. Sun's investigation showed that Sun had more than a reasonable basis to add affirmative defenses and counterclaims of inequitable conduct. During this time, Sun also learned that Cot'n Wash falsely marked its Dropps products with the '319 patent.

### B. Sun Promptly Disclosed Its Inequitable Conduct and False Marking Counterclaims

On October 8, the very next day after speaking to Mr. Cicini, Sun served an amended interrogatory response (Response to Plaintiffs' Interrogatory No. 9) asserting invalidity of the '319 patent based on the information learned from Mr. Cicini. (*See* Brook Decl., Ex. C). One week later, on October 15, Sun sent Plaintiffs its Proposed Amended Answer which disclosed in detail Sun's counterclaims of false marking and inequitable conduct. The inequitable conduct counterclaim alleged several misrepresentations to the Patent and Trademark Office, specifically: (1) misrepresentations regarding inventorship of the '319 patent; (2) failure to disclose prior public use of the invention claimed in the '319 patent; and (3) failure to disclose material prior art publications. (Motion to Amend, Ex. 1, Proposed Amended Answer at Affirmative Defense ¶¶ 9-52, Counterclaim ¶¶ 27-74). Sun proposed that all parties agree to permit each other's amended pleadings.

### C. The Parties Reached Agreement to Amend Their Pleadings

On October 25, 2013, Plaintiffs responded to Sun's proposed amendment, asking when the counterclaims would be addressed, writing "Please let us know if you are proposing that your new counterclaims be severed and dealt with during the damages phase as well." (Brook Decl., Ex. D). Sun explained that the inequitable conduct claims would be handled during the current phase of the litigation because they are directly related to liability, but that to reach agreement Sun would consider handling the false marking counterclaims during the damages phase. *Id.*

At approximately the same time, the Henkel defendants also sought Plaintiffs' consent to file similar false marking claims. On October 30, 2013, Plaintiffs asked if Henkel would consent to address their false marking claims in the damages phase. (Brook Decl., Ex. E). Henkel responded to Plaintiffs that it concurred with the proposal, and suggested that Plaintiffs or Sun prepare a stipulation permitting all amendments in both cases. *Id.*

After Plaintiffs (the party common to both cases) fell silent, Sun circulated a proposed stipulation on January 6, 2014. On January 12, 2014, Plaintiffs reneged on the agreement to amend the pleadings and for the first time since October 15, 2013 objected to Sun's inequitable conduct and false marking counterclaims. (Brook Decl., Ex. F). On January 22, Sun and Plaintiffs held a meet and confer to attempt to resolve the impasse, but Plaintiffs maintained their new position and refused to consent.

### D. Plaintiffs Took Discovery Related to Sun's Proposed Counterclaims Between October 15, 2013 and January 2014

While the parties were negotiating to amend the pleadings (and before Plaintiffs advised that they no longer consented to the amendment), Plaintiffs had Sun's Proposed Amended Complaint and conducted full discovery on the new counterclaims. For example, on January 14, 2014, Mr. Dickler (one of the named inventors) testified at deposition that he could not recall whether it was he or Mr. Cicini who first conceived of the invention claimed in the '319 patent.[2] And Mr. Cicini stated in his declaration,[3] and testified at deposition on January 28, that

---

[2]     *See e.g.,* 2014-01-14 Dickler Tr. 8:18-21 (When asked if he remembered who "first came up with the idea for this invention?," Mr. Dickler replied "I don't recall whether it was Cicini or myself.") (Brook Decl., Ex. G).

[3]     See *Declaration* of Thomas Cicini (Brook Decl., Ex. H).

4

Mr. Dickler had no part in the development of the invention.[4] Mr. Cicini also testified that both he and Mr. Dickler publicly demonstrated the invention to customers.[5]

## III. ARGUMENT

Sun's motion for leave to file an amended pleading is governed by Fed. R. Civ. P. 15(a). *See* Scheduling Order (D.I. No. 20) ¶ 3 ("All motions to join other parties and amend the pleadings shall be governed by Rule 15."). Pursuant to Rule 15(a)(2), a party may amend its pleading with "the opposing party's written consent or the court's leave." Such leave to amend should be "freely give[n]" "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Third Circuit has adopted a liberal standard when considering leave to amend pleadings under Rule 15(a)(2). *Dole v. Arco Chemical Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990); *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989). This standard ensures that claims are decided "on the merits rather than on technicalities." *Dole*, 921 F.2d at 487.

Moreover, in ruling on a motion for leave to amend, a court may consider equitable factors such as undue delay, bad faith, actual prejudice to the non-moving party, and futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006). None of these factors apply.

### A. Sun Did Not Delay In Asserting its Proposed Counterclaims

Inequitable Conduct: Inequitable conduct is a claim for fraud that must be pled with particularity under Fed. R. Civ. P. 9(b). *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009). Due to this heightened pleading standard, courts have repeatedly granted

---

[4] *See, e.g.*, 2014-01-28 Cicini Tr. 48:5-9 ("If you have to be involved in the -- in the actual production of the work to be involved in a patent, to be named as an inventor, then [Mr. Dickler] shouldn't be on it. You decide. He did nothing.") (Brook Decl., Ex. I).

[5] *See, e.g.*, 2014-01-28 Cicini Tr. 270:18-273:14. (Ex. I).

leave to amend to assert inequitable conduct after the claimant confirmed facts underlying the claim. *See, e.g.*, *Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 489 (D. Del. 2003); *Leader Technologies, Inc. v. Facebook, Inc.*, No. 08–862, 2010 WL 2545959, at *4 (D. Del. June 24, 2010); *Cordance Corp. v. Amazon.com, Inc.*, 255 F.R.D. 366, 372 (D. Del. 2009). This is precisely what occurred in this case.

Sun asserted its proposed counterclaims immediately after confirming facts supporting its inequitable conduct claims. Sun first spoke to Mr. Cicini on October 7, 2013. The very next day, on October 8, Sun served an amended interrogatory response, asserting invalidity of the '319 patent due to improper inventorship and public prior use. One week later on October 15, Sun sent Plaintiffs an amended answer which laid out in detail Sun's counterclaims for both inequitable conduct and false marking.[6]

False Marking: For the false marking claim, delay becomes undue "when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend." *Bjorgung v. Whitetail Resort, LP,* 550 F.3d 263, 266 (3d Cir. 2008). Sun's false marking claim arises from its review of Plaintiffs' production which continued until the January 20, 2014 discovery cutoff. As discussed above, Sun sent Plaintiffs the Proposed Amended Answer on October 15, 2013. As such, Sun has not unduly delayed asserting the false marking counterclaim.

---

[6] Plaintiffs' belated January 12 refusal to agree to Sun amending its counterclaims asserts that Plaintiffs were prejudiced by late production of a declaration of Mr. Cicini that Henkel produced in their case. This argument is a misdirection. Sun did not have access or know the contents of that declaration until October 17, 2013 (after it conducted its own investigation and provided a copy of its amended pleading to Plaintiffs on October 15). Even then, the declaration was work product provided to Sun with the condition that Sun could not produce it without Henkel's consent. It is Sun's understanding that Henkel produced the declaration to Plaintiffs in or around December 2013.

### B.     Sun's Motion to Amend is Brought in Good Faith

Sun timely conducted its investigation, negotiated the proposed amendments in good faith, and any delay in bringing this motion to amend was caused by Plaintiffs. Plaintiffs should have timely informed Sun that they would not consent to the amended pleadings. But instead, Plaintiffs did not initially raise any objections, fell silent when asked to draft a proposed stipulation permitting amendment in their two cases, took discovery related to inequitable conduct and false marking, and then after seeing the results of that discovery, withdrew their consent. These claims should be decided on the merits and permitted into the case.

### C.     Plaintiffs Will Not Be Unduly Prejudiced by this Amendment

To show undue prejudice, Plaintiffs must show that their "ability to present [their] case would be seriously impaired were amendment allowed." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990) (citations omitted). Plaintiffs must do "more than merely claim prejudice." *See Cordance Corp. v. Amazon.com, Inc.*, 255 F.R.D. 366, 371 (D. Del. 2009) (quoting *Bechtel v. Robinson,* 886 F.2d at 652). They must show that they were "unfairly disadvantaged or deprived of the opportunity to present facts or evidence which [they] would have offered had the amendments been timely." *Id.*

Inequitable Conduct: In refusing to consent, Plaintiffs claimed they were unable to take discovery on Sun's proposed counterclaims. (*See* Ex. F). As discussed above, Sun provided Plaintiffs its Proposed Amended Answer on October 15, 2013. This was more than two weeks before Plaintiffs took their first deposition, and more than three months before the close of fact discovery. Indeed, Plaintiffs have been aware of the substantive allegations regarding inequitable conduct since at least August 2, 2013, when they were asserted by Aqua Chempacs. In addition, Plaintiffs are facing substantively the same inequitable conduct counterclaims in the

7

Henkel case (to which they agreed in August 2013).[7] In sum, Plaintiffs have long known about the inequitable conduct allegations and if anything, had a head start over Sun in developing their inequitable conduct defense.

Moreover, there are no additional documents that Plaintiffs would have searched. Plaintiffs were already under an obligation to produce documents evidencing that Dr. Ruck and Mr. Dickler, and not Mr. Cicini, were involved in the conception and reduction to practice of the '319 patent in response to Sun's document requests. In addition, Plaintiffs had Sun's proposed amendment in hand when they questioned both named inventors of the '319 patent (Dr. Ruck and Mr. Dickler), and an attorney who prosecuted the application that led to the '319 patent (Mr. Tener). Moreover, the deposition of Mr. Cicini, the principal party related to inequitable conduct, only recently took place on January 28, 2014. Thus, Plaintiffs cannot point to any additional discovery actions that could cause undue prejudice.[8]

False Marking: Plaintiffs also cannot point to any prejudice related to discovery from Sun's false marking counterclaim. As discussed above, Sun provided its Proposed Amended Answer to Plaintiffs well before discovery ended (and before Plaintiffs took any depositions). Moreover, Plaintiffs were already under an obligation to produce document relevant to false marking, specifically the water content and ingredients of the Dropps product. In addition, Sun consented to addressing Plaintiffs' false marking during the damages phase. Thus, Plaintiffs will

---

[7] In addition, on August 1 Sun incorporated Henkel's invalidity contentions that addressed Mr. Cicini, and asserted that the '319 patent was invalid due to incorrect inventorship and prior public use in its First Supplemental Invalidity Contentions. (Brook Decl., Ex. J at 2).

[8] Furthermore, Plaintiffs cannot contend that they are unduly prejudiced by Henkel's purported delayed disclosure of the Cicini declaration. Sun received the Cicini declaration after Sun sent Plaintiffs the Proposed Amended Answer. As such, any purported delay in its production is irrelevant to Sun's inequitable conduct claim.

8

be able to conduct further discovery on false marking should this litigation proceed to that portion.

### D. Sun's Proposed Counterclaims are Not Futile

Futility is measured by whether a proposed amended claim could survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 256 n.14 (3d Cir. 2010) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). On a motion to dismiss, the court must accept all allegations as true and draw all inferences in the non-moving party's favor. *Bd. of Trs. v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). Generally, a claim is sufficient to withstand a motion to dismiss if it is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Since inequitable conduct is a claim for fraud, it must be pled under the Fed. R. Civ. P. 9(b) heightened standard. *Exergen,* 575 F.3d at 1327. Sun's allegations easily surpass these thresholds.

Inequitable Conduct: Under the heightened pleading standard of Fed. R. Civ. P. 9(b), inequitable conduct is sufficiently pled when it alleges the "specific who, what, when, where and how of the material misrepresentation[s] or omission[s] committed before the PTO." *Exergen,* 575 F.3d at 1327; *see also Senju Pharm. Co., Ltd. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 306 (D. Del. 2013) (Robinson, J.). In addition, a claim for inequitable conduct requires a showing of the requisite state of mind. These include "(1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO." *Exergen*, 575 F.3d 1327. Pleading such "knowledge" or "intent" may be "averred generally" and only requires the pleading of "sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Id.*

9

Here, Sun's Proposed Amended Answer alleges in specific detail the '319 patent applicants' misrepresentations to the PTO: (1) the failure to disclose Mr. Cicini's public uses of the invention claimed in the '319 patent,[9] (2) that the applicants misrepresented that Mr. Dickler was an inventor while omitting Mr. Cicini,[10] and (3) the failure to disclose material prior art publications.[11] Sun's pleading alleges the "who" (Messrs. Dickler and Ruck), the "what" (omission of material evidence and false statements), the "when" (during the application of the '319 patent), and the "where" (materials omitted in submission to the PTO and a false declaration). Moreover, had the applicants not made the alleged misrepresentations to the PTO, they would not have been issued the patent. Accordingly, it is reasonable for the Court to infer the requisite state of mind. Therefore, Sun's inequitable conduct counterclaim is sufficient to survive a motion to dismiss and is not futile.[12]

False Marking: To state a claim for false marking under 35 U.S.C. § 292, the claimant must show (1) that Cot'n Wash marked an unpatented article with a patent marking (2) with intent to deceive the public. *Ca. Med. Prod., Inc. v. Tech. Med. Prod., Inc.*, 921 F. Supp. 1219, 1261 (D. Del 1995); 35 U.S.C § 292(a). Pursuant to the amendment under the American Invents Act, a claimant who has suffered competitive injury may bring an action for false marking. 35 U.S.C § 292(b).

---

[9] Proposed Amended Answer (Ex. B), Third Counterclaim, ¶¶ 29-38, 46-49, 52.

[10] *Id.* ¶¶ 39-45.

[11] *Id.* ¶¶ 51, 53.

[12] In addition, Plaintiffs have in essence conceded that Sun's inequitable conduct counterclaim is not futile by stipulating that Henkel could amend its pleading to assert inequitable conduct based on the same circumstances.

10

Each of the '319 patent's product claims require that the water content of the liquid cleaning concentrate is less than 7.5 wt. % water (claim 1) or a water content below 10 wt. % water and containing dimethyl glyoxine (claim 35). During Sun's review of Plaintiffs' production, Sun uncovered evidence that Cot'n Wash falsely marked its Dropps product with the '319 patent. Plaintiffs' documents identifying the formulations for Cot'n Wash's Dropps show that it was formulated to have more than 7.5 wt. % water and did not contain dimethyl glyoxine. (Brook Decl., Ex. K). Moreover, the documents show that Jonathan Propper, CEO of Cot'n Wash, knew that the formulation of the Dropps product contained more than 7.5 wt. % water. (Brook Decl., Ex. L).

The allegations in Sun's proposed pleading set forth a prima facie case for false marking. It alleges that (1) Cot'n Wash's Dropps product was marked with the '319 patent but was not covered by any of its claims,[13] and (2) that Cot'n Wash knew that Dropps was not covered by the '319 patent, and thus marked the Dropps product with an intent to deceive.[14] *See Clontech Lab., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005) (intent to deceive "is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true.").

Competitive injury is adequately pled when "the parties are in competition in the relevant market and the alleged false marking harms the [claimant's] ability to compete." *RB Rubber Prod., Inc. v. ECORE Intern., Inc.*, No. 11–cv–319, 2013 WL 3432081, at *2 (D. Or. July 8,

---

[13]   Motion to Amend, Ex. 1, Proposed Amended Answer at Fourth Counterclaim ¶¶ 54-60, 68-69.

[14]   *Id.* at ¶¶ 61-67.

11

2013); *see also Ira Green, Inc. v. J.L. Darling Corp.*, No. 11–cv–05796, 2011 WL 6218146, at *4 (W.D. Wash. Dec. 5, 2011). In addition, it "is not required to produce evidence of actual competitive injury to survive a motion to dismiss." *RB Rubber Prod.*, 2013 WL 3432081, at *5.

Here, Sun alleges that Sun and Cot'n Wash were competitors in the laundry detergent field.[15] Sun also alleged that Cot'n Wash's false marking caused competitive injury by causing "lost sales, loss of market share, loss of business opportunity, loss of goodwill, and/or other damages."[16] It is plausible that Sun lost sales and goodwill to competitors because Cot'n Wash issued a press release that it was suing Sun for infringement (*see* Brook Decl., Ex. M) and contacted Sun's customers stating that Sun was infringing the '319 patent, while implying that the Dropps product was patented (*see, e.g.*, Brook Decl., Ex. N). These actions have been found to support a claim for competitive injury. *See RB Rubber Prod.*, 2013 WL 3432081, at *4. As such, Sun's false marking claim is not futile.

### IV. CONCLUSION

For the reasons presented above, Sun respectfully requests leave to amend its pleadings to add counterclaims for (1) unenforceability of the '319 patent due to inequitable conduct and (2) false marking.

---

[15] *Id.* at ¶¶ 70-71.

[16] *Id.* at ¶¶ 73-74. Sun also alleged that Cot'n Wash's false marking created a false perception that Cot'n Wash is an innovator in the field stifling other competitors from entering the market.

|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|---|---|
| | */s/ Regina Murphy* |
| | _____ |
| OF COUNSEL: | Jack B. Blumenfeld (#1014) |
| | Regina Murphy (#5648) |
| Errol B. Taylor | 1201 North Market Street |
| Fredrick M. Zullow | P.O. Box 1347 |
| Anna Brook | Wilmington, DE  19899 |
| MILBANK, TWEED, HADLEY | (302) 658-9200 |
| & MCCLOY LLP | jblumenfeld@mnat.com |
| 1 Chase Manhattan Plaza | rmurphy@mnat.com |
| New York, NY  10005 | |
| (212) 530-5000 | *Attorneys for Defendant The Sun Products Corporation* |
| January 31, 2014 | |
| 7970848.2 | |

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 31, 2014, upon the following in the manner indicated:

| | |
|---|---|
| Jessica Zeldin, Esquire<br>ROSENTHAL, MONHAIT & GODDESS, P.A.<br>919 Market Street, Suite 1401<br>Wilmington, DE  19801 | *VIA ELECTRONIC MAIL* |
| Michael J. Bonella, Esquire<br>Jenna Pellecchia, Esquire<br>Tod A. Kupstas, Esquire<br>Matthew L. Mustokoff, Esquire<br>Richard A. Russo, Jr., Esquire<br>Joseph H. Meltzer, Esquire<br>KESSLER, TOPAZ, MELTZER & CHECK LLP<br>280 King of Prussia Road<br>Radnor, PA  19807 | *VIA ELECTRONIC MAIL* |

*/s/ Regina Murphy*

Regina Murphy (#5648)